## Commonwealth *v.* Weik, Appellant.

Argued November 10, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*John W. Beyer,* with him *Arnold, Bricker Beyer & Barnes,* for appellant.

*Richard M. Martin,* Assistant District Attorney, with him *William C. Storb,* District Attorney, for appellee.

OPINION BY ERVIN, J., December 17, 1958:

This is an appeal by the defendant from the sentence of the court below for violation of §903 of The Vehicle Code, 75 PS §453, making it unlawful to operate a commercial vehicle on any highway with a gross weight in excess of that provided for the various classes of vehicles therein described. The defendant had appealed to the court below from the summary proceeding before a justice of the peace.

From the testimony it appears that the defendant was traveling north on U. S. Route 222 in Providence Township, Lancaster County, operating a Ford truck loaded with crushed stone. The truck was owned by D. M. Stoltzfus & Son, Inc. and bore a ZZ class license. The prosecutor, State Trooper Fitzgerald, passed the defendant going in the opposite direction and as he did, some of the stone from the defendant's truck fell upon the state car. The trooper turned his car around and followed the defendant for approximately one mile before stopping him. At the point where defendant was stopped by the trooper, he was in Strasburg Township, approximately 200 feet north of the dividing line between Strasburg and Providence Townships. The trooper examined the defendant's weight slip for the loaded truck, which revealed that the truck was 9,090 pounds overweight. The defendant was then taken back into Providence Township, through which he had driven, to the nearest available justice of the peace in that township and there an information was filed charging him with operating an overweight truck in Providence Township. The testimony before the court below was to the effect that the defendant pleaded guilty to the charge without a hearing. The transcript filed by the justice of the peace does not disclose a guilty plea but states that the fine and costs of $853.50 were paid by the defendant's employer and that no hearing was requested.

Route 222 was under detour by the Highway Department between Mylin's Corner and Quarryville for construction purposes. The portion of the highway from Quarryville north to where the actual construction was under way was approximately four miles. This four-mile stretch was open for local traffic "and anyone else that had any business in there." At Mylin's Corner and Quarryville, barricades were erected with appropriate signs indicating that the road was closed except for local traffic. One could drive around the barricades. At the time of the occurrence there was other vehicular traffic on the four-mile stretch not under actual construction. The defendant was traveling on that part of the highway which was not under construction and was hauling stone from a quarry near Quarryville to the construction site.

The appellant's first contention is that the highway upon which he was traveling was not a highway as defined in the code since it was not open to the public generally. Section 903 of The Vehicle Code makes it unlawful to "operate on any highway" with a load in excess of the prescribed limit. Did the portion of the highway which was open to local traffic cease to be a highway? We think not. The effect of the closing of Route 222 and the erection of barricades and detour signs is provided for in the Act of June 1, 1945, P. L. 1242, §§423 and 424, 36 PS §§670-423, 670-424. While §424 provides that any person who shall drive on, over or across any state highway which has been closed by the department shall be subject to a fine upon summary conviction before a justice of the peace, it is also provided therein that "Persons who have no outlet due to the closing of a highway may drive on, over or across such highway, with the consent in writing of, and subject to such conditions as may be prescribed by, the department or its agents or con-

tractors, without being subject to the penalties imposed by this section." It is clear from a reading of the acts of assembly that through traffic is prohibited but that local traffic is permitted. It would be unfortunate if the local traffic need not obey the provisions of The Vehicle Code. This would mean that a local user could operate a motor vehicle at a speed of 100 miles per hour, endangering the lives and property of other lawful users of the highway, and be immune to arrest. We cannot believe that the legislature intended such a ridiculous result. One of the main purposes for limiting the weight for commercial trucks is to preserve the highways from destruction. Why then should a truck hauling construction material for a new portion of the highway be permitted to contribute to the destruction of a portion of the highway not actually under construction? While this Court in *Bennett v. Boney*, 168 Pa. Superior Ct. 385, 388, 77 A. 2d 694, said: "When a road is closed by the State or, as in this instance, by competent municipal authority it ceases to be a highway subject, as such, to the provisions of The Vehicle Code of May 1, 1929, P. L. 905, as amended.", this utterance was not necessary to a decision of that case and therefore may be considered as obiter dictum. The Supreme Court, in *Bennett v. Boney*, 367 Pa. 249, 80 A. 2d 81, reversed the Superior Court and held the defendant liable to a gratuitous licensee for affirmative or active negligence. Furthermore, in the *Bennett v. Boney* case, the accident occurred upon the portion of the highway which was actually under construction, whereas in the present case the violation occurred upon a portion of the highway which was not under actual construction. We are of the opinion that the users of the portion of the highway which was not under actual construction were not relieved from the penal provisions of The Vehicle Code relating to maximum loads.

The appellant also contends that the justice of the peace before whom he was prosecuted had no jurisdiction of the case since the arrest was made in Strasburg Township and the justice, who resided in Providence Township, was not the nearest available magistrate from where the arrest was made. For summary offenses the legislature has provided that the proceeding "shall be brought before the nearest available magistrate within the city, borough, incorporated town, or township in the county *where the alleged violation occurred.* . . ." (Emphasis added.) Act of May 1, 1929, P. L. 905, art. XII, §1201, as amended, 75 PS §731. The necessary procedure that a state policeman must follow in effecting an arrest on view is set forth in §1211 of The Vehicle Code, 75 PS §741. The relevant portion of that section provides: "Whenever an arrest is made upon view, . . . the officer making the arrest shall forthwith take the defendant before the nearest available magistrate in the city, borough, incorporated town or township, *where the alleged offense occurred.* . . . " (Emphasis added.) It should be noted that the prosecution must be before the nearest available magistrate to the place *where the alleged offense occurred* and not to the place where the arrest was actually made. Section 903, 75 PS §453, providing for maximum gross weights of commercial vehicles, expressly provides: "For the enforcement of this section all peace officers shall have the power to arrest on view for violation of any of the provisions of this section." The offense of operating a vehicle with a gross weight in excess of that permitted by the code is a continuing offense; that is, it commences when the operator begins his trip and continues until he disposes of the excess weight. See *Com. v. Walker,* 71 Pa. D. & C. 279; *Com. v. Castronova,* 6 Pa. D. & C. 2d 621; and *Com. v. Goetz,* 6 Pa. D. & C. 2d 152. He could therefore be

prosecuted in any borough or township through which he passed or in which he operated the vehicle upon a public highway and the magistrates of such boroughs or townships would have concurrent jurisdiction. In the present case, the trooper followed the appellant for approximately one mile in Providence Township and for only 200 feet in Strasburg Township. The offense occurred in both townships and the officer could have taken the defendant before the nearest available magistrate in either township.

The appellant also contends that the evidence does not support a conviction since the defendant lost some of his load by spilling during his trip from the quarry to the point where he was stopped. There was evidence to the effect that some of the load spilled off the truck but there was no evidence as to how much had spilled. We are of the opinion that the Commonwealth proved beyond a reasonable doubt that the defendant operated an overweight truck on the public highways of Providence Township. The Commonwealth produced as one of its witnesses Simon Smoker, the weighmaster who was employed by the owner of the truck, who testified that the gross weight of the truck after being loaded with the stone at the quarry was 57,500 pounds. The truck was permitted a gross weight of 48,410 pounds. There was an excess weight of 9,090 pounds when the truck left the scales at the quarry near Quarryville. This witness testified that the place where the truck was stopped by the trooper was approximately two miles from the scales. He also testified that the road from the quarry to Route 222 was a state road. The length of this road from the quarry to Route 222 was about three-quarters of a mile, according to this witness. The truck then traveled upon Route 222 for a distance of approximately one mile and a quarter to the point where it was stopped. It

is unreasonable to believe that it would have spilled 9,090 pounds of stone in this distance. Furthermore, the truck was delivered to the owner immediately after the fine was paid on the day of the arrest. At that time the owner was thoroughly familiar with the over-weight charge and if any doubt existed, could have weighed the truck to show its contents at that time. No such evidence was produced by the defendant and it must therefore be assumed that such evidence would not have been favorable to the defendant had it been produced. It also appeared from the evidence that the owner intended to bill the contractor for the quantity of stone shown by the weight slip. It is unreasonable to suppose that the contractor would pay for 9,090 pounds of stone he did not receive.

We are convinced that the Commonwealth met the burden of proving beyond a reasonable doubt that this truck was overweight at the time when it was driven upon the public highways in Providence Township.

The judgment of sentence is affirmed.

---

DISSENTING OPINION BY WATKINS, J.:

I am constrained to dissent from the majority for a reason I consider fundamental in the construction placed on sections 1201 and 1211 of The Vehicle Code, 75 PS sections 731 and 741. The obvious purpose of section 1201, as amended, was to prevent harassment of motor vehicle operators upon the highways of this Commonwealth and to require peace officers to file information charging violations of the summary provisions of The Vehicle Code before the nearest available magistrate *where the violation occurred.* In my view, the legislature plainly intended informations to be lodged before the nearest available magistrate from the place where the arrest was made.

The Act of 1923, June 14, P. L. 718, section 25, which preceded the present code provided that all such informations "shall be made before a mayor, burgess, magistrate, alderman, or justice of the peace, within the county *wherein the offense is alleged* to have occurred." The plain intendment of this section, as incorporated in the present code, means that the information must be brought before the nearest available magistrate from the place where the *violation is alleged or charged* against the motor vehicle operator involved. This means the place of arrest.

The construction placed upon this section by the majority merely tends to confuse, not clarify, the duty placed upon peace officers in lodging informations against violators. Under the majority view, for example, since the test if the *place where the overloading of the truck took place,* it is clearly possible for a truck to be overloaded in Erie County, proceed upon the highways of this Commonwealth to Philadelphia County, and there picked up by a peace officer in that county who had followed him. If the logic of the majority is to prevail, such peace officer can return the violator to Erie County and lodge an information against the violator before the nearest available magistrate in Erie County rather than in Philadelphia County. Such absurd result was never contemplated by the legislature.

The manifest intention of the legislature in prescribing certain maximum weights which may be lawfully carried upon the highways of this Commonwealth was to protect the highways from premature erosion and destruction. If, therefore, any truck was apprehended and suspected of being overweight and in violation of The Vehicle Code, under section 6 of the Act of 1955, June 30, P. L. 225, 75 PS §454, it must be weighed at a weighing station within two miles of

the place of apprehension or, if none be available within such distance, it must be weighed by portable scales brought to the scene of the alleged violation. It is clear, therefore, that if such a vehicle is found to be overweight and in violation of the code, such information must be brought before the nearest available magistrate *at the place of apprehension or arrest.*

Section 1211 of the code provides, inter alia, that "Whenever an arrest is made upon view . . . the officer making the arrest shall forthwith take the defendant before the nearest available magistrate . . . where the alleged offense occurred." Section 903, 75 PS §453, provides that "For the enforcement of this section all peace officers shall have the power to *arrest on view* for violation of any of the provisions of this section." If, therefore, an officer has the right to arrest on view, it is this arrest which precedes the filing of the information and the nearest available magistrate is ascertained from this point. If upon checking the weight, such vehicle is found to be overweight, regardless of where the weighing took place, the offense was committed at the place where the arrest took place. To hold, however, that a magistrate, in the instant case, in such boroughs or townships through which such vehicle passed would all have concurrent jurisdiction over the offense is to fly in the face of the contrary intention expressed by the legislature and, in effect, nullify its plain mandate. The object of the legislature was to prevent overloaded vehicles to travel upon the highways generally and not within the prescribed boundaries of the various municipalities. The penalty provided for violation of the statute under consideration is a very substantial fine, which fine is payable to the municipality wherein the information is lodged and conviction had. The temptation for collusive action between peace officers and certain township au-

thorities is greatly increased under the interpretation of the statute as given in the majority opinion. It is clear that the legislature never intended this to be so. If the intention of the legislature is that which is proclaimed for it by the majority opinion, why was it at all necessary to enact sections 1201 and 1211 of the code? Obviously, the legislature intended that such violations be taken to the nearest available magistrate from the place where the arrest or apprehension was made.

I would therefore reverse the summary conviction. GUNTHER, J., joins in this dissent.